Malgorzata **GORNICKA**, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE**, Respondent.

No. 81–2145.

United States Court of Appeals, Seventh Circuit.

Argued March 31, 1982.

Decided June 22, 1982.

502

Paul Bargiel, Doss, Puchalski, Keenan, Bapgiel & Dicks, Ltd., Chicago, Ill., for petitioner.

Richard M. Evans, Dept. of Justice, Washington, D. C., for respondent.

Before PELL, Circuit Judge, KASHIWA,* Associate Judge, and ESCHBACH, Circuit Judge.

* The Honorable Shiro Kashiwa, Associate Judge of the United States Court of Claims, is sitting by designation.

1. 8 U.S.C. § 1251(a)(2) provides:
   "§ 1251. *Deportable aliens—General classes*
   "(a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—

KASHIWA, Associate Judge.

This case raises the question whether an alien's bond determination made pursuant to 8 U.S.C. § 1252(a) (1976) and 8 C.F.R. § 242.2 (1981) is directly appealable to the Courts of Appeals under 8 U.S.C. § 1105a (1976).

Malgorzata Gornicka, the petitioner, a citizen of Poland, entered the United States on September 5, 1979, as a nonimmigrant visitor for pleasure under section 101(a)(15)(B) of the Immigration and Nationality Act (hereinafter the Act). A visit until October 1, 1979, was authorized by her visa; she, however, stayed past the October 1 deadline. On January 29, 1981, petitioner was apprehended by an immigration official. Deportation proceedings were then commenced against the petitioner by an order to show cause dated January 30, 1981. Petitioner was charged under section 241(a)(2) of the Act, 8 U.S.C. § 1251(a)(2) (1976).[1] Pursuant to 8 C.F.R. § 242.2(a), the District Director authorized the release of petitioner under a $2,000 bond. Petitioner appealed the amount of the bond and at a bond redetermination hearing before an immigration judge, held pursuant to 8 C.F.R. § 242.2(b), the bond was reduced to $1,500. The petitioner paid the $1,500 bond, was released, and is presently at liberty.

Petitioner appealed the decision of the immigration judge to the Board of Immigration Appeals contending, first, that there was no need for bond and, second, that her constitutional rights were violated because the bond was excessive and there was no transcript of the bond redetermination hearing. The Board rejected petitioner's contentions and held a $1,500 bond was necessary to ensure her presence at future deportation proceedings since she had no family in the United States and had previ-

\* \* \* \* \* \*
"(2) entered the United States without inspection or at any time or place other than as designated by the Attorney General or is in the United States in violation of this chapter or in violation of any other law of the United States;"

ously ignored the regulations of the Immigration and Naturalization Service. As of this date, no deportation hearing has been held nor order entered against petitioner. Petitioner now seeks review of the decision of the Board of Immigration Appeals in this court.[2]

## I

Section 106 of the Act, 8 U.S.C. § 1105a governs this court's jurisdiction of direct appeals of final orders of deportation. It states in pertinent part:

§ 1105a. *Judicial review of orders of deportation and exclusion*

*(a) Exclusiveness of procedure*

The procedure prescribed by, and all the provisions of chapter 158 of title 28, shall apply to, and *shall be the sole and exclusive procedure for, the judicial review of all final orders of deportation,* heretofore or hereafter *made against aliens within the United States pursuant to administrative proceedings under section 1252(b)* of this title or comparable provisions of any prior Act, * * *." [Emphasis supplied.]

Petitioner contends the decision of the Board of Immigration Appeals is appealable under section 1105a. We must decide whether the decision of the Board of Immigration Appeals concerning petitioner's bond is a "final order of deportation" subject to direct review in this court under section 1105a.

There has been much litigation concerning the meaning and parameters of "final orders of deportation." *See, e.g., Dastmalchi v. Immigration and Naturalization Service,* 660 F.2d 880 (3d Cir. 1981). *See generally* Friendly, *The Gap in Lawmaking,* 63 Col.L.Rev. 787, 795–796 (1963). In *Foti v. Immigration and Naturalization Service,* 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963), the first Supreme Court case on this issue, the Court held that "final orders of deportation" include denials of suspension of deportation. The Court said:

* * * It seems apparent that, because of the consistent practice under the administrative regulations since 1940 of adjudicating deportability and passing on applications for discretionary relief in the same proceeding, the final administrative action that Congress was thinking of in using the phrase "final orders of deportation" included denials of suspension of deportation. * * * [*Id.* at 232, 84 S.Ct. at 315.]

Next in a short per curiam opinion, *Giova v. Rosenberg,* 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964), the Supreme Court held that "final orders of deportation" encompassed denials of motions to reopen deportation hearings.

In its most recent case on section 1105a, *Cheng Fan Kwok v. Immigration and Naturalization Service,* 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968), the Supreme Court has placed a limitation upon "final orders of deportation." In *Cheng Fan Kwok,* the petitioner conceded his deportability but obtained permission to depart the United States voluntarily. Petitioner, however, failed to voluntarily depart and was subsequently ordered to surrender for deportation. At that time, he requested a stay of deportation pending submission and disposition of an adjustment of status. The District Director found the petitioner to be ineligible for such an adjustment of status. The Court after reviewing the legislative history of section 106 of the Act held:

* * * the judicial review provisions of § 106(a) embrace *only those determinations made during a proceeding conducted under § 242(b),* including those determinations made incident to a motion to reopen such proceedings. [Footnote omitted; emphasis supplied; 392 U.S. at 216, 88 S.Ct. at 1976.]

Thus the decision of the District Director in a proceeding separate from the deportation hearing was held not to be a "final order of deportation" subject to direct review in the Courts of Appeals.

---

**2.** On October 26, 1981, respondent filed a "Motion to Dismiss Petition for Review." The motion was responded to by petitioner on November 5, 1981. By order of this court dated December 8, 1981, it was ordered that the motion to dismiss would be taken with the case after it had been briefed and argued. This decision takes care of the entire case including the motion of October 26.

## II

■ Custody, bond, and parole determinations are governed by 8 U.S.C. § 1252(a)

3. 8 U.S.C. § 1252(a) provides:

"§ 1252. *Apprehension and deportation of aliens—Arrest and custody; review of determination by court*

"(a) Pending a determination of deportability in the case of any alien as provided in subsection (b) of this section, such alien may, upon warrant of the Attorney General, be arrested and taken into custody. Any such alien taken into custody may, in the discretion of the Attorney General and pending such final determination of deportability, (1) be continued in custody; or (2) be released under bond in the amount of not less than $500 with security approved by the Attorney General, containing such conditions as the Attorney General may prescribe; or (3) be released on conditional parole. But such bond or parole, whether heretofore or hereafter authorized, may be revoked at any time by the Attorney General, in his discretion, and the alien may be returned to custody under the warrant which initiated the proceedings against him and detained until final determination of his deportability. Any court of competent jurisdiction shall have authority to review or revise any determination of the Attorney General concerning detention, release on bond, or parole pending final decision of deportability upon a conclusive showing in habeas corpus proceedings that the Attorney General is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances in the case of any alien to determine deportability."

4. 8 U.S.C. § 1252(b) provides:

*Proceedings to determine deportability; removal expenses*

"(b) A special inquiry officer shall conduct proceedings under this section to determine the deportability of any alien, and shall administer oaths, present and receive evidence, interrogate, examine, and cross-examine the alien or witnesses, and, as authorized by the Attorney General, shall make determinations, including orders of deportation. Determination of deportability in any case shall be made only upon a record made in a proceeding before a special inquiry officer, at which the alien shall have reasonable opportunity to be present, unless by reason of the alien's mental incompetency it is impracticable for him to be present, in which case the Attorney General shall prescribe necessary and proper safeguards for the rights and privileges of such alien. If any alien has been given a reasonable opportunity to be present at a

(1976).[3] Deportation proceedings, on the other hand, are governed by 8 U.S.C. § 1252(b) (1976) (as amended by 95 Stat. 1620).[4] The literal language of section

proceeding under this section, and without reasonable cause fails or refuses to attend or remain in attendance at such proceeding, the special inquiry officer may proceed to a determination in like manner as if the alien were present. In any case or class of cases in which the Attorney General believes that such procedure would be of aid in making a determination, he may require specifically or by regulation that an additional immigration officer shall be assigned to present the evidence on behalf of the United States and in such case such additional immigration officer shall have authority to present evidence, and to interrogate, examine and cross-examine the alien or other witnesses in the proceedings. Nothing in the preceding sentence shall be construed to diminish the authority conferred upon the special inquiry officer conducting such proceedings. No special inquiry officer shall conduct a proceeding in any case under this section in which he shall have participated in investigative functions or in which he shall have participated (except as provided in this subsection) in prosecuting functions. Proceedings before a special inquiry officer acting under the provisions of this section shall be in accordance with such regulations, not inconsistent with this chapter, as the Attorney General shall prescribe. Such regulations shall include requirements that—

"(1) the alien shall be given notice, reasonable under all the circumstances, of the nature of the charges against him and of the time and place at which the proceedings will be held;

"(2) the alien shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose;

"(3) the alien shall have a reasonable opportunity to examine the evidence against him, to present evidence in his own behalf, and to cross-examine witnesses presented by the Government; and

"(4) no decision of deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence.

The procedure so prescribed shall be the sole and exclusive procedure for determining the deportability of an alien under this section. In any case in which an alien is ordered deported from the United States under the provisions of this chapter, or of any other law or treaty, the decision of the Attorney

1105a requires reviewable orders be entered "pursuant to administrative proceedings under section *1252(b)* of [title 8] * * *." [Emphasis supplied.] The order in this case concerned a bond determination and was made pursuant to administrative proceedings under section 1252(a), not section 1252(b). 8 C.F.R. § 242.2(b), which details bond review hearings, states:

> * * * Consideration under this paragraph by the immigration judge of an application or request of an alien regarding custody or bond shall be separate and apart from any deportation hearing or proceeding under this part, and shall form no part of such hearing or proceeding or of the record thereof. The determination of the immigration judge as to custody status or bond may be based upon any information which is available to the immigration judge or which is presented to him by the alien or the Service. * * *

Thus it is clear bond hearings are separate and apart from deportation hearings. The considerations taken into account in a bond hearing do not form part of the record in the deportation proceeding. Whether or not bond is required has no bearing on whether a final order of deportation will be entered. A bond determination is not a final order of deportation, is not made during an administrative proceeding under section 1252(b), and does not effect the deportation proceeding.[5]

■ In *Cheng Fan Kwok*, the Court held only determinations made during a proceeding conducted under section 1252(b) and those determinations made incident to a motion to reopen such proceedings are appealable under section 1105a. An order of deportation had been entered against Cheng Fan Kwok and as a result of a subsequent denial of relief, it was clear Cheng Fan Kwok was to be deported. The Court drew a distinction between discretionary relief determinations made during a deportation hearing and those made subsequent to the deportation hearing. Our case is simpler. Not only was the determination at issue made in a proceeding separate from the deportation proceeding but no order of deportation has been entered against petitioner nor have deportation proceedings even begun. We have no idea whether or not petitioner will be deported. We therefore find that bond determinations are not "final orders of deportation" subject to appeal under section 1105a.

Furthermore section 1252(a) provides its own mechanism for *special limited* review of bond, custody and parole determinations. It provides in pertinent part:

> * * * Any court of competent jurisdiction shall have authority to review or

General shall be final. In the discretion of the Attorney General, and under such regulations as he may prescribe, deportation proceedings, including issuance of a warrant of arrest, and a finding of deportability under this section need not be required in the case of any alien who admits to belonging to a class of aliens who are deportable under section 1251 of this title if such alien voluntarily departs from the United States at his own expense, or is removed at Government expense as hereinafter authorized, unless the Attorney General has reason to believe that such alien is deportable under paragraphs (4) to (7), (11), (12), (14) to (17), (18), or (19) of section 1251(a) of this title. If any alien who is authorized to depart voluntarily under the preceding sentence is financially unable to depart at his own expense and the Attorney General deems his removal to be in the best interest of the United States, the expense of such removal may be paid from the appropriation for the enforcement of this chapter."

5. The Ninth Circuit in *Chadha v. Immigration and Naturalization Service*, 634 F.2d 408 (9th Cir. 1980), *appeal filed, juris. postponed, argued* February 22, 1982, held:

> " * * * the phrase 'final orders * * * made * * * pursuant to administrative proceedings under section 242(b)' encompasses review not only of determinations actually made at a section 242(b) hearing, but also of the legal validity of determinations on which the final order of deportation is contingent." *Id.* at 413. [Note: section 242(b) of the Act is codified at 8 U.S.C. § 1252(b).]

Since bond determination hearings are separate from and do not affect deportation hearings, final orders of deportation are not contingent upon the legal validity of a bond determination. *See* 8 C.F.R. § 242.2(b). Thus under the standard espoused by the Ninth Circuit, bond determinations are not appealable under section 1105a.

revise any determination of the Attorney General concerning detention, release on bond, or parole pending final decision of deportability *upon a conclusive showing in habeas corpus proceedings that the Attorney General is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances* in the case of any alien to determine deportability. [Emphasis supplied.[6]]

Habeas corpus proceedings brought in district court allow for more immediate review than appeals under section 1105a. *See* 28 U.S.C. § 2243 (1976). To allow fuller, less immediate review under section 1105a would negate an important purpose of that section. That purpose is "to expedite the deportation of undesirable aliens by preventing successive dilatory appeals to various federal courts * * *." *Foti*, 375 U.S. at 226, 84 S.Ct. at 312; *see also United States ex rel. Marcello v. District Director*, 634 F.2d 964, 967–970 (5th Cir. 1981), *cert. denied*, 452 U.S. 917, 101 S.Ct. 3052, 69 L.Ed.2d 421 (1981).

### III

In conclusion, for the reasons stated above, we hold that bond determinations made pursuant to 8 U.S.C. § 1252(a) and 8 C.F.R. § 242.2 are not directly appealable to Courts of Appeals under 8 U.S.C. § 1105a. We therefore find we do not have jurisdiction of petitioner's appeal of the decision of the Board of Immigration Appeals. The petition is dismissed.

---

**6.** We form no conclusions as to whether habeas corpus proceedings might have been appropriate in this case.