Ibrahim Ahmed DALIS, Petitioner,

v.

Michael BRADY, INS, District Director, Respondent.

No. 90–C–2304.

United States District Court, D. Colo.

June 4, 1991.

---

Vicki Mandell–King, Asst. Federal Public Defender, Denver, Colo., for petitioner.

George Gill, Asst. U.S. Atty., Denver, Colo., for respondent.

## ORDER

CARRIGAN, District Judge.

Petitioner, Ibrahim Ahmed Dalis, who is currently incarcerated at the INS Detention Facility, commenced this action seeking a writ of habeas corpus. The case was assigned to Magistrate Judge Donald E. Abram who reviewed the matter and prepared a recommendation pursuant to Local Rule 605. The Magistrate Judge has recommended that the petition be granted. Copies of both the recommendation and the Local Rule were mailed to the petitioner and the respondent on May 15, 1991. In response to the Magistrate Judge's recommendation, the parties have stipulated that the petition be granted based on the reasoning set forth in the Magistrate Judge's recommendation.

I have reviewed the entire file, including the Magistrate Judge's recommendation and the parties' stipulation. The recommendation appears to be supported by the law and the facts, and I therefore adopt it as the order of this court.

Accordingly IT IS ORDERED that:

(1) the Magistrate Judge's recommendation is adopted as the order of this court;

(2) the petition for writ of habeas corpus is granted;

(3) pursuant to the parties' stipulation, the petitioner shall be released immediately;

(4) petitioner shall be subject to supervision as provided in 8 U.S.C. § 1252(d); and

(5) pursuant to the parties' stipulation, the stay of deportation shall remain in effect until further order of this court.

D.E. ABRAM, Chief United States Magistrate Judge.

Petitioner, Ibrahim Ahmed Dalis, currently incarcerated at the INS Detention Facility, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, an Arab citizen of Israel admitted as a nonimmigrant student, has asserted that he is being illegally detained in violation of his rights of due process, right to bail and rights of equal protection. He has named as Respondent the INS District Director. A hearing was held on April 10, 1991. At that hearing Respondent offered to release Petitioner on a $15,000 bond. Petitioner asserted that he could not afford the $15,000 bond. A Public Defender was appointed Petitioner and on April 24, 1991 a second hearing was held in which both sides presented their arguments concerning the release of Ibrahim Ahmed Dalis.

Pursuant to Rule 605 of the Local Rules of Practice of the United States District Court for the District of Colorado, this matter has been referred to Magistrate Judge Donald E. Abram. Magistrate Judge Abram has reviewed the Petition

and the applicable law, and hereby recommends that the Petition be granted.

## ASSERTIONS

In July of 1986, Petitioner was arrested by state authorities in Toledo, Ohio for criminal charges.[1] Bond was set at $10,-000. Petitioner asserts, however, that when Petitioner attempted to meet bail he found that an "Immigration hold" had been placed on him. Petition, p. 7 ¶¶ 2–4. Petitioner asserts that no bond was ever set by the INS. Petition, p. 7 ¶ 6. Deportation proceedings commenced and Petitioner was found deportable and ordered deported in February of 1989. Petition, p. 8 ¶ 11.

I. Petitioner asserts that he has been held under a "warrantless arrest" and should therefore have been interviewed and been informed of his rights within 24 hours of his "Immigration hold." Petitioner asserts that the "Immigration hold" expired after 24 hours. Petitioner asserts that he should have been allowed to post bail and be released before the institution of deportation proceedings or released on personal recognizance, pending the outcome of the criminal proceedings. Petition, p. 7 ¶¶ 7–9.

II. Petitioner also asserts that the INS violated its own policy by instituting the deportation proceedings while Petitioner was still in confinement. Petitioner states that he is not an "aggrevated [sic] felon" and therefore this was improper policy. Petition, p. 8 ¶ 10.

III. Petitioner further asserts that he was released from confinement on June 25, 1990 and transported to Lucas County Jail in Toledo and held until June 28, 1990 to allow the INS to resume custody of Petitioner. Petitioner asserts that this was illegal confinement for over 48 hours. Petition, p. 8 ¶ 12.

IV. Petitioner was transported to WSI/INS Processing Center in Aurora, Colorado on June 28, 1990 to await deportation to Israel after a final administrative order of deportation. Petitioner asserts that no bond has been set for release from detention. Petitioner further asserts that he has been held illegally past the six month limitation. Petitioner now seeks his immediate release from detention and requests release on bond while this petition is being adjudicated. Petition, pp. 8–9, ¶¶ 13–15.

## EXHAUSTION OF REMEDIES

■ Exhaustion of available and adequate administrative remedies is a prerequisite to all habeas corpus petitions in federal court. 28 U.S.C. § 2254(b). The procedure to exhaust administrative remedies of bond determinations starts with the Immigration Judge. The Immigration Judge has original jurisdiction to hear review of a bond request unless a final order of deportation has been rendered. 8 C.F.R. § 242.2(d) (1990). However, no appeal shall be allowed when the Service notifies the alien that it is ready to execute the order of deportation and takes him into custody for that purpose. 8 C.F.R. § 242.2(d) (1990). In this case, Petitioner has been taken into custody pending the execution of the final order of deportation. Because no appeal is available to Petitioner under these circumstances, Petitioner has effectively exhausted his administrative remedies. 8 C.F.R. § 242(d) (1990); 28 U.S.C. § 2254(b). This Court therefore has jurisdiction to review this Petition.

## I. WARRANTLESS ARREST

■ Petitioner's first assertion was that he was held under an "Immigration hold." Petitioner asserts that an "Immigration Hold" is a warrantless arrest and that he should therefore have been interviewed and been informed of his rights within 24 hours of his "Immigration Hold." Petition, p. 7, ¶¶ 7–9. Petitioner cites to 8 C.F.R. § 287.3. Respondents argue, and this Court agrees, that Petitioner was not held on an "Immigration Hold," but on an "Immigration Detainer." See Administrative Record (A.R.) 000085. An Immigration Hold under 8

---

1. Petitioner was arrested, charged, and convicted by a jury of Felonious Assault. A.R. 000092–000097. Petitioner had shot at his wife and her son while they were in their automobile. A.R. 000137–000138.

C.F.R. § 287.3 discusses illegal entries and the stopping of aliens suspected of being in the Country illegally. An "Immigration Detainer" is not a warrantless arrest and is found under a separate section of the Code, 8 C.F.R. § 242.2. The Immigration Detainer was properly administered in accordance with 8 C.F.R. § 242.2 with the appropriate form as required by that section. A.R. 000099. Because this Court finds that there was no warrantless arrest and the procedures for proper detention have been followed, Petitioner did not have a right to be interviewed and informed of his rights within 24 hours under 8 C.F.R. § 287.3 and this Court recommends that this ground of the Petition be dismissed.

## II. "AGGRAVATED FELON"

■ Petitioner also asserts that the INS violated its own policy by instituting the deportation proceedings while Petitioner was still in confinement. Petitioner states that he is not an "aggrevated [sic] felon" and therefore this was improper policy. Under 8 U.S.C. § 1252(i), it states, "In the case of an alien who is convicted of an offense which makes the alien subject to deportation, the Attorney General shall begin any deportation proceeding as expeditiously as possible after the date of the conviction."

It is true, as Petitioner suggests, that conviction as an "aggravated felon" would implicate 8 U.S.C. § 1252(i). However, being an aggravated felon is not the only type of conviction which would implicate this section. While Petitioner was not charged as an "aggravated felon," Petitioner was found to be guilty as one who committed a "crime of moral turpitude" under 8 U.S.C. § 1251(a)(4). See, A.R. 000068 [citing to the Statutes at Large, Immigration and Nationality Act, Pub.L. No. 414, § 241(a)(4), 66 Stat. 204 (1952)]. A "crime of moral turpitude" is subject to the expeditious nature of 8 U.S.C. § 1252(i). Because Petitioner was found guilty of a "crime of moral turpitude," it was proper for the Service to begin deportation proceedings while Petitioner was incarcerated. 8 U.S.C. §§ 1251(a)(4), 1252(i).

## III. TEMPORARY DETENTION FOR OVER FORTY–EIGHT HOURS

■ Petitioner further asserts that he was released from confinement on June 25, 1990 and transported to Lucas County Jail in Toledo and held until June 28, 1990 to allow the INS to resume custody of Petitioner. Petitioner asserts that this was illegal confinement for over 48 hours. 8 C.F.R. § 242.2(a)(4). While it may be true that the Service held Petitioner past the allowed 48 hours, Petitioner has alleged no injury for the extra few hours of which he was held. Further, even if as Petitioner asserts, he was held for a brief time past the allowed 48 hours, this does not entitle Petitioner to the drastic remedy of habeas corpus. The federal habeas statute empowers the federal courts to dispose of the matter "as law and justice require." 28 U.S.C. § 2243; see also Kuhlmann v. Wilson, 477 U.S. 436, 447, 106 S.Ct. 2616, 2623, 91 L.Ed.2d 364 (1986). Kuhlmann states, "the Court has reaffirmed that 'habeas corpus has traditionally been regarded as governed by equitable principles.' The Court uniformly has been guided by the proposition that the writ should be available to afford relief to those 'persons whom society has grievously wronged' in light of modern concepts of justice." Id. at 447, 106 S.Ct. at 2623. Law and justice would not require such drastic relief as granting release from custody merely because the Petitioner, while awaiting transfer of custody, was held for a short amount of time past the allowed forty-eight hours. Petitioner has alleged no prejudice or injury by this short wait during transfer.

## IV. BOND AND DETENTION REVIEW

■ Petitioner asserts that he is entitled to be released on bond and that it is a violation of his rights of due process and right as against excessive bail to be denied bond. Petitioner also asserts that his current detention is illegal. The Federal District Court does not have jurisdiction to review an INS deportation order. Direct review of a deportation order must be tak-

en exclusively in the U.S. Court of Appeals. INA § 106(a), 8 U.S.C. § 1105a(a). However, bond determinations and review of detention for aliens awaiting deportation are properly reviewable before this Court. Bond determinations are reviewable as separate and distinct from deportation hearings and have been held to be subject to review by a district court. In *Gornicka v. Immigration and Naturalization Service*, 681 F.2d 501 (7th Cir.1982), the court held,

> Thus it is clear bond hearings are separate and apart from deportation hearings. The consideration taken into account in a bond hearing do not form part of the record in the deportation proceeding. Whether or not bond is required has no bearing on whether a final order of deportation will be entered. A bond determination is not a final order of deportation, is not made during an administrative proceeding under section 1252(b), and does not effect the deportation proceeding.

*Id.* at 505. (footnote omitted).

The Federal District Court may review the Petitioner's detention and review the Petitioner's lack of release on bond. This review, however, is limited to whether the Attorney General is proceeding with reasonable dispatch to effectuate deportation and if the Attorney General has effected deportation within six months of the final order of deportation. 8 U.S.C. § 1252(c) states:

> When a final order of deportation under administrative processes is made against any alien, the Attorney General shall have a period of six months from the date of such order, or, if judicial review is had, then from the date of the final order of the court, within which to effect the alien's departure from the United States, *during which period*, at the Attorney General's discretion, the alien may be detained, released on bond in an amount and containing such conditions as the Attorney General may prescribe, or released on such other condition as the Attorney General may prescribe. Any

> court of competent jurisdiction shall have authority to review or revise any determination of the Attorney General concerning detention, release on bond, or other release during such six-month period *upon a conclusive showing in habeas corpus proceedings that the Attorney General is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances in the case of any alien to effect such alien's departure from the United States within such six-month period.*

Thus, release of custody, the setting of bond, or detention are under the discretion of the Attorney General. This discretion is limited, however, to the six months following final order of deportation and upon proceeding with reasonable dispatch to effect departure. If there has been no deportation within the six-month period, the Petitioner must be released subject to supervision as provided for in 8 U.S.C. § 1252.

**A. REASONABLE DISPATCH TO EFFECT REMOVAL**

 On February 7, 1989, the Immigration Judge issued Petitioner's deportation order. A.R. 000067–000069. Petitioner was also notified that if he wished to appeal that he must do so by February 21, 1989. A.R. 000066. On June 22, 1990, the Service issued a Warrant of Deportation against Petitioner. A.R. 000059. On July 6, 1990 Petitioner submitted an appeal of the Order of Deportation to the BIA. A.R. 000048. Petitioner also filed a Motion for Leave to Proceed Out of Time. A.R. 000045. On December 7, 1990, the BIA denied review on the merits because of the untimeliness of the appeal.[2]

Petitioner has presented no assertion that the Attorney General is failing to seek deportation diligently. Petitioner has, however, asserted that the Attorney General has exceeded the six months in which to effect deportation. Under 8 U.S.C. § 1252(c), the Attorney General has six

---

**2.** The appeal was filed almost one and a half years after the time allotted for appeal. Petitioner was notified after the initial deportation order that he must appeal by February 21, 1989. A.R. 000066. Petitioner did not file an appeal until July 6, 1990. A.R. 000048.

months from the date of the final order of deportation or if there is judicial review, of confirmation of that order by appeal "from the date of the final order of the court." *Id.* Petitioner and Respondent disagree as to whether a "dismissal for untimeliness" is a final order of the Court. If such a dismissal is a final order of the Court, the Attorney General would have an additional six months of time in which to detain Petitioner pending deportation.

Petitioner asserts that the date of measurement for the six months in which to effectuate final deportation is the date that he was taken into custody by the service. Petition, p. 8 ¶ 15. Petitioner cites to § 242(c) of the Act [codified at 8 U.S.C. § 1252(c) ]. The applicable portion of which Petitioner refers to states,

> For the purposes of this section an order of deportation heretofore or hereafter entered against an alien in legal detention or confinement, other than under an immigration process, shall be considered as being made as of the moment he is released from such detention or confinement, and not prior thereto.

This section states that the six months in which to effect deportation shall begin commence from the moment of *release* from custody other than that of the "immigration process." Immediately before Petitioner was taken into custody by the Service and after the decision to deport Petitioner had been rendered, Petitioner was in the Custody of the Ohio Reformatory serving his criminal sentence for assault with a deadly weapon. Petitioner was released from confinement in the State prison on June 25, 1990 and held for three days to be retaken into custody by the Service. Respondents assert that 8 U.S.C. § 1252(c) (last sentence) is inapplicable and that the date of determination of the six months should be measured from the December 7, 1990 dismissal of the untimely appeal. Response, p. 2 ¶ 15. Respondents cite to the first sentence of 8 U.S.C. § 1252(c). "When a final order of deportation under administrative processes is made against any alien, the Attorney General shall have a period of six months from the date of such order, or, if judicial review is had,

then from the date of the final order of the court...." *Id.* *See also* Response, p. 2, ¶ 15. (Admission that "The Service argues that the six-month period has not expired yet claiming that the dismissal of petitioner's appeal to the BIA updated the finality of the deportation decision." Petition, pp. 7–8, ¶ 15).

While it is true as Respondent suggests that the date to be measured by should be when Petitioner's final order of judgment occurred, this Court does not believe that a dismissal for "untimeliness" is a final order of the court. Further, the six month limitation on the Attorney General with which to effect deportation did not begin to run until Petitioner was released from state custody under the state charges. 8 U.S.C. § 1252(c) (last sentence). Petitioner's date of release from state custody was on June 25, 1990. The Attorney General had six months from that date to effect deportation or to release Petitioner from custody. However, even if Petitioner is released for failure to effectuate deportation, upon release Petitioner would still be subject to the supervision provided for in 8 U.S.C. § 1252.

## B. APPEAL FROM THE FINAL ORDER

Respondents assert that because Petitioner appealed his order of deportation, (even though untimely and dismissed without addressing the merits), that the appeal should change the date of the final order of deportation. Respondents rely on the first sentence of 8 U.S.C. § 1252(c). Petitioner, however, asserts that a dismissal for untimeliness of appeal is not a final order of deportation under 8 U.S.C. § 1252(c) and therefore Petitioner has been held beyond the six months allowed the Attorney General.

Petitioner cites to 8 C.F.R. § 3.37, 8 C.F.R. § 243.1 and 242(b) of the Act. 8 C.F.R. § 3.37 states, "Except when certified to the Board, the decision of the Immigration Judge becomes final upon waiver of appeal *or upon expiration of the time to appeal* if no appeal is taken." *Id.* (emphasis added). Petitioner has not effectively appealed in this case. Petitioner's ap-

peal to the BIA was dismissed as untimely. 8 C.F.R. § 243.1 states,

> Except as otherwise required by section 242(c) of the Act for the specific purposes of that section, an order of deportation, including an alternate order of deportation coupled with an order of voluntary departure, made by the special inquiry officer in proceedings under Part 242 of this chapter *shall become final upon dismissal of an appeal by the Board of immigration Appeals, upon waiver of appeal, or upon expiration of the time allotted for an appeal when no appeal is taken; or, if such an order is issued by the Board or approved by the Board upon certification, it shall be final as of the date of the Board's decision.*

*If* the appeal had been heard on the merits and dismissed by the BIA, there would in effect have been a new final order of deportation, and it would be proper to allow the Attorney General another six months in which to effect deportation. However, the BIA has not reviewed the Petitioner's appeal, but has summarily dismissed the appeal due to untimeliness. Petitioner should not be disadvantaged by having an additional six months of detention merely because he filed an untimely appeal. The purpose of the statute is to allow the petitioner an opportunity to have his claim reviewed and is in effect another order of deportation. Where there was no such review, the petitioner should not be disadvantaged. The federal habeas statute empowers the federal courts to dispose of the matter "as law and justice require." 28 U.S.C. § 2243; *see also Kuhlmann v. Wilson,* 477 U.S. at 447, 106 S.Ct. at 2623. Justice would not allow such a result in this case.

## C. STAY OF DEPORTATION

■ Respondent further argues that "8 C.F.R. 3.6 provides that where a case is pending before the BIA, a stay of deportation is considered applied." Response, p. 2, ¶ 15. 8 C.F.R. § 3.6(a), entitled Stay of Execution of Decision, states,

> Except as provided in § 242.2 of this chapter and paragraph (b) of this section, the decision in any proceeding under this chapter from which an appeal to the Board may be taken shall not be executed during the time allowed for the filing of an appeal unless a waiver of the right to appeal is filed, nor shall such decision be executed while an appeal is pending or while a case is before the Board by way of certification.

8 C.F.R. § 3.6 (1990).

Petitioner, in response asserts that this section only applies "to timely appeals within the allotted time for the appeal (10 days.)" Traverse, p. 3, ¶ 15.

In *U.S. ex rel. Pupo–Tordecilla v. Sava,* 704 F.Supp. 55 (S.D.N.Y.1989), the federal district court of New York ruled on 8 C.F.R. § 3.6 in a similar situation. In that case the alien was seeking a stay of deportation while his untimely appeal was being reviewed citing to 8 C.F.R. § 3.6. The court, however, interpreted 8 C.F.R. § 3.6 to *not* stay deportation proceedings upon the alien's *untimely appeal.*

Considering *Sava,* in light of Petitioner's case, 8 C.F.R. § 3.6 did not stay the deportation proceedings during Petitioner's untimely appeal and therefore did not stay the Attorney General's six month limitation to effect deportation. Petitioner's detention has gone beyond the six months allowed for the Attorney General to effect deportation. It is therefore recommended that Petitioner be granted the writ of habeas corpus.

## RELEASE

■ Although it is recommended that Petitioner be released, 8 U.S.C. § 1252(d) states,

> Any alien, against whom a final order of deportation as defined in subsection (c) of this section heretofore or hereafter issued has been outstanding for more than six months, shall, pending eventual deportation, be subject to supervision under regulations prescribed by the Attorney General. Such regulations shall include provisions which will require any alien subject to supervision (1) to appear from

time to time before an immigration officer for identification; (2) to submit, if necessary to medical and psychiatric examination at the expense of the United States; (3) to give information under oath as to his nationality, circumstances, habits, associations, and activities, and such other information, whether or not related to the foregoing, as the Attorney General may deem fit and proper; and (4) to conform to such reasonable written restrictions on his conduct or activities as are prescribed by the Attorney General in his case. Any alien who shall willfully fail to comply with such regulations, or willfully fail to appear or to give information or submit to medical or psychiatric examination if required, or knowingly give false information in relation to the requirements of such regulation, or knowingly violate a reasonable restriction imposed upon his conduct or activity, shall be fined not more than $1,000 or imprisoned not more than one year, or both.

Therefore, it is recommended that Petitioner be released without bond. However, this release should be subject to the supervision as provided for in the foregoing section of the United States Code.

IT IS THEREFORE RECOMMENDED that Petitioner Ibrahim Ahmed Dalis's Petition be granted. Petitioner should be released from detention without bond as he has been held past the six months allowed for the Attorney General to effect deportation. However, it is further recommended that Petitioner will continue to be held under I.N.S. supervision as is required under 8 U.S.C. § 1252(d).

FURTHER, IT IS ORDERED that under Rule 605 of the Local Rules of Practice of the United States District Court for the District of Colorado, the parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83, 100 S.Ct. 2406, 2412, 65 L.Ed.2d 424 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985).

## LOCAL RULES OF PRACTICE

### RULE 605

#### Prisoner Petitions

A. Subject to provisions of the United States Supreme Court Rules governing § 2254 and § 2255 cases, the uniform rules of ancillary forms for use in the district court within the Tenth Circuit have been adopted. These rules apply to *pro se* petitions for writs of habeas corpus pursuant to 28 U.S.C. §§ 2241 and 2254 and motions under Rule 35, Federal Rules of Criminal Procedure, and to civil rights complaints under 42 U.S.C. § 1983. Copies of the uniform rules and ancillary forms shall be made available upon request made to the clerk.

B. When presented for filing, *pro se* petitions under 28 U.S.C. §§ 2241 and 2254 and *pro se* complaints under 42 U.S.C. § 1983 shall be delivered to a magistrate who shall review the motion and affidavit to proceed *in forma pauperis* and rule thereon in accordance with 28 U.S.C. § 1915. If the motion is granted, the magistrate shall promptly review the file and, if there is any basis for jurisdiction and possible merit, the Magistrate shall direct the clerk to make service of process.

C. If the magistrate determines that the case may be dismissed pursuant to 28

U.S.C. § 1915(d) or F.R.Civ.P. 12, the magistrate shall prepare a recommendation and appropriate order for consideration by a district judge, who shall at that time be selected as provided in Rule 200.

D. These cases shall be assigned to a district judge drawn by lot and to a designated magistrate. The assigned magistrate shall review promptly all further pleadings and may:

1. Issue such orders as may be needed to obtain a complete record.

2. Conduct such evidentiary hearings as may be necessary, including the conduct of on-site depositions and investigations.

3. Prepare appropriate findings and recommendations for consideration by the district judge, copies of which shall be mailed to the parties who shall have ten (10) days after service thereof to serve and file specific written objections thereto. If no such objections are timely filed, the magistrate's proposed findings and recommendations may be accepted by the district judge and appropriate orders entered without further notice.

4. Obtain the expected release date of inmates filing complaints under 42 U.S.C. § 1983 to determine when plaintiffs may be available for trial.

(Revisions Effective February 1, 1984)