**In the Matter of Ali Reza GHALAMSIAH.**

**Appeal of DISTRICT DIRECTOR, IMMIGRATION AND NATURALIZATION SERVICE.**

**No. 86–5195.**

United States Court of Appeals, Third Circuit.

Argued Sept. 18, 1986.
Decided Nov. 26, 1986.

Thomas W. Greelish, U.S. Atty., Ruth V. Simon (argued), Sp. Asst. U.S. Atty., Newark, N.J., for appellant.

Melvin R. Solomon (argued), Parsekian & Solomon, P.C., Hackensack, N.J. for appellee; Jack J. Lipari, on brief.

Before SEITZ, SLOVITER, and RO-SENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

Although appeals to this court in alien deportation cases are not infrequent, this case is unusual because the Government is the appellant. The appeal raises a narrow issue of considerable importance to the Government concerning the power of a district court under the Immigration and Nationality Act, 8 U.S.C. §§ 1101–1503, to release an alien on bail pending a motion to reopen the deportation proceedings and stay deportation. The district court stayed deportation and ordered the alien, Ali Reza Ghalamsiah, released from custody pending hearing on the motion to reopen upon the posting of a $1,000 bond. The Government appeals only from the order releasing Ghalamsiah on bail. We reverse.

### I.

Ali Reza Ghalamsiah is an Iranian who first came to the United States on a student visa in 1971. Other than a brief visit to Iran in 1974, he has remained in the United States since 1971. The last extension of his visa expired June 30, 1977.

On October 7, 1977, Ghalamsiah married Judy Lee Jackson, a United States citizen. She filed a visa petition on behalf of her husband, who then applied for adjustment of his status to permanent residency based on the marriage. On February 28, 1979, Jackson withdrew the petition, stating that although she had entered the marriage in good faith, Ghalamsiah had married her only to obtain resident status, and that the couple had never lived together. They were divorced in September 1982.

The Immigration and Naturalization Service (INS) notified Ghalamsiah of the withdrawal of the petition and the consequent denial of his application for permanent resident status in April 1979. Although the INS granted him thirty days voluntary departure time, he did not depart. On November 15, 1979, INS officers arrested Ghalamsiah and commenced deportation proceedings.

At his deportation hearing, Ghalamsiah conceded his deportability, but applied for asylum or withholding of deportation pursuant to 8 U.S.C. § 1254(a)(1). He claimed that he would be persecuted in Iran because he had received scholarship money from the previous government under the Shah; because he, a Muslim, had married a non-Muslim citizen of the United States (Jackson); and because he had applied for asylum. The immigration judge denied Ghalamsiah's applications, but granted him ninety days voluntary departure time. The Board of Immigration Appeals (BIA) dismissed his appeal, but granted him thirty days voluntary departure time. This court denied review of the BIA decision, and the INS issued a warrant for his deportation.

In February 1985, the INS instructed Ghalamsiah to appear at its office ready for deportation on March 5, 1985. When he appeared showing that he had filed a petition for review that day, deportation was automatically stayed. This court affirmed his deportation. *Ghalamsiah v. INS,* 779 F.2d 42 (3d Cir.1985).

On January 31, 1986, the INS ordered Ghalamsiah to surrender for deportation on February 19, 1986. He did not appear, breaching a $2,000 bond posted for his appearance. He explains his failure to appear as being due to his fear of appearing without counsel.[1]

---

1. Counsel for Ghalamsiah had requested an extension because he (counsel) was scheduled to be away on vacation that day; this request was denied.

On February 24, 1986, Ghalamsiah showed up at the Franklin Lakes, New Jersey, municipal building with his fiancee, Shahin Pirian, where they were to be married by the mayor. Pirian, also a native and citizen of Iran, is Jewish and had been granted political asylum because of the risk of persecution she would face in Iran.[2] Just before the ceremony, INS officers arrested Ghalamsiah and detained him at the Passaic, New Jersey, County Jail, and rescheduled him for deportation on February 26. On February 26 Ghalamsiah filed a petition for a writ of habeas corpus. The district court issued a temporary restraining order barring deportation. It further ordered that Ghalamsiah be allowed to marry Pirian at the county jail. They were married the next day.

Several days later Ghalamsiah applied for a stay of deportation, and his new wife filed a second preference visa petition on his behalf. In his petition, Ghalamsiah alleged that he feared persecution in Iran due to his marriage to a Jew and to his intention to convert to Judaism, that he feared he would be unable to leave Iran to rejoin his wife, and that his wife could not reenter Iran. He also filed a separate motion to reopen the deportation proceedings to allow him to reapply for asylum, for withholding of deportation, and for suspension of deportation.

On March 6, 1986, the district director denied Ghalamsiah's stay request of March 3, 1986, citing his prior immigration history, including his prior marriage, absence of evidence that he would face persecution in Iran, and his failure to report for deportation as the bases for the unfavorable exercise of discretion. The director denied Ghalamsiah's request for bail because of the imminence of deportation and because his failure to surrender for deportation made him a poor bail risk. The motion to reopen and Ghalamsiah's petition for an immigrant visa are pending. After a March 10th hearing on the habeas corpus petition, the district court ordered a stay of deportation pending disposition of the motion to reopen and ordered Ghalamsiah's release from confinement on posting of $1,000 cash and his own personal recognizance.

## II.

The only question before this court is whether the district court had the power to enlarge Ghalamsiah on $1,000 bail upon granting the stay of deportation or whether it should have remanded the case to the district director for determination of custody pending determination of the motion to reopen deportation proceedings.[3]

## A.

Resolution of this very narrow question turns on interpretation of the language and effect of § 242 of the Immigration and Nationality Act (the Act), 8 U.S.C. § 1252. Section 242(a) provides in pertinent part:

Pending a determination of deportability in the case of any alien as provided in subsection (b) of this section, such alien may, upon warrant of the Attorney General, be arrested and taken into custody. *Any such alien taken into custody may, in the discretion of the Attorney General* and pending such final determination of deportability, (1) be continued in custody; or (2) *be released under*

---

**2.** The district court found that the couple had a bona fide relationship of at least three years and bona fide marriage plans. Included in the evidence upon which that court relied were the affidavit of a rabbi with whom Ghalamsiah had been discussing his plans to convert to Judaism and an insurance policy on Ghalamsiah's life naming Pirian as beneficiary in early 1983; Pirian was not divorced from her former husband, however, until December 1984.

**3.** The INS does not appeal from the decision to grant the stay itself. Although the INS does assert that the district court erred in that decision, it acknowledges that Ghalamsiah is likely to get a stay of deportation in any event, because the BIA may act on the petition to reopen deportation proceedings before an appeal of a decision on the merits could be heard. If the BIA denies the motion and Ghalamsiah appeals that denial, he would be entitled to an automatic stay under 8 U.S.C. § 1105a(a)(3); if the BIA grants the motion, his deportation will be stayed as a matter of course. The INS thus appeals only the order of the district court to release Ghalamsiah from custody and to set his bail.

bond ... containing such conditions as the Attorney General may prescribe; or (3) be released on conditional parole. But such bond or parole, whether heretofore or hereafter authorized, may be revoked at any time by the Attorney General in his discretion, and the alien may be returned to custody under the warrant which initiated the proceedings against him and detained until final determination of his deportability. Any court of competent jurisdiction shall have authority *to review or revise any determination of the Attorney General concerning detention, release on bond,* or parole pending final decision of deportability *upon a conclusive showing in habeas corpus proceedings that the Attorney General is not proceeding with such reasonable dispatch as may be warranted* by the particular facts and circumstances in the case of any alien to determine deportability.

(Emphasis added.)

Section 242(c), dealing with release and bail upon final determination of deportation, provides in pertinent part:

(c) When a final order of deportation under administrative processes is made against any alien, the Attorney General shall have a period of six months from the date of such order, or, if judicial review is had, then from the date of the final order of the court, within which to effect the alien's departure from the United States, during which period, *at the Attorney General's discretion, the alien may be detained, released on bond in an amount and containing such conditions as the Attorney General may prescribe, or released on such other conditions as the Attorney General may prescribe.* Any court of competent jurisdiction shall have authority *to review or revise any determination of the Attorney General concerning detention, release on bond, or other release* during such six-month period *upon a conclusive showing in habeas corpus proceedings that the Attorney General is not proceding with such reasonable dispatch as may be warranted* by the

particular facts and circumstances in the case of any alien to effect such alien's departure from the United States within such six-month period.

(Emphasis added.)

Thus, the statute confers upon the Attorney General (and therefore upon his designee, the INS district director) the power to release persons in Ghalamsiah's position and to set the terms, including bail, of release. It also provides for review and revision by the district court of these determinations.

The INS argues that the statute vests the power to make an initial determination *exclusively* with the Attorney General and his designees, and that the district court has thus improperly usurped the authority of the district director. The district court's proper course of action upon a grant of habeas corpus, asserts the INS, was to remand the issues of release and terms, including bail, to the district director. Once an initial determination was made by the district director, the INS agrees that the district court could have reviewed the decision.

Ghalamsiah would have this court read the statute to vest only a nonexclusive power in the Attorney General and his designees. The district court, having the power to release a detainee unconditionally in habeas corpus proceedings, Ghalamsiah argues, also has the inherent power to set the terms of release, including bail. He asserts that the statute was not intended to limit the district court's power to make an initial determination, nor may it consistently with the common law of habeas corpus be so construed.

In support of its restrictive reading of the statute, the INS relies on *Caporali v. Whelan,* 582 F.Supp. 217 (D.Mass.1984). In that case, the court held that the district director had abused his discretion in detaining a deportable alien without bail. That court then turned to the issue of terms of release and decided that it lacked the authority to make an initial determination:

Having determined that [the district director's] order is invalid, I must next consider what relief is appropriate. [The alien] urges that in these circumstances the United States District Court should itself determine, after appropriate hearing, whether petitioner should be released pending determination of his petition for review in the Court of Appeals, and if so on what conditions. This contention appears to have some support in apparent practice, but no case has been cited in which a district court, after explicitly considering the question whether it has jurisdiction to do so, has undertaken this responsibility of itself making the discretionary decision regarding release. Congress has plainly directed, in 8 U.S.C. § 1252(c), that this discretionary decision is to be made by the Attorney General (or, in this case, his authorized representative, the respondent). This court has jurisdiction only to review and not to make the initial discretionary determination.

*Id.* at 220.

Ghalamsiah attempts to distinguish *Caporali* on the ground that in that case the court had found the record of the district director's proceedings so incomprehensible as to have afforded an insufficient basis for determination of the propriety of the detention. *Id.* It was for this reason, he argues, that the court remanded, not because it felt itself statutorily compelled to do so. The *Caporali* court's language on this point, however, does not support this assumption. The court concluded that on the record before it the detention of the alien without bail "constituted an abuse of discretion." *Id.* Nonetheless, it did not release him on bail but directed that he be released if the district director did not conduct an appropriate hearing on the merits of the alien's application for release within ten days of the court's order.

**4.** Ghalamsiah cites a number of other cases, including *Tod v. Waldman,* 266 U.S. 113, 45 S.Ct. 85, 69 L.Ed. 195 (1924), in support of his argument that the district court had the common law and equitable power to release him on bail. As none of these cases involved § 242, the

In *United States ex rel. Potash v. District Director,* 169 F.2d 747 (2d Cir.1948), a district court construed the predecessor statute to § 242 as placing the authority to determine the question of bail pending deportation proceedings in the hands of the Attorney General because those entrusted with the enforcement of deportation laws ordinarily are considered best qualified to rule on those questions. Even review was to be limited to cases of arbitrary withholding of bail. *See also United States ex rel. DeGeronimi v. Shaughnessy,* 187 F.2d 896 (2d Cir.1951). Five years later the Second Circuit, in *United States ex rel. Yaris v. Esperdy,* 202 F.2d 109 (2d Cir.1953), specifically denied that § 242 had altered the powers of the district court with respect to review of the Attorney General's determinations.

Ghalamsiah points to a more recent case in support of his liberal reading of § 242. The court in *Bertrand v. Sava,* 535 F.Supp. 1020 (S.D.N.Y.1982), *rev'd on other grounds,* 684 F.2d 204 (2d Cir.1982), stated that a district court has the choice whether to remand or to set the conditions of release itself. The INS points out, however, that in *Bertrand* the court did in fact remand the determination of conditions of release to the district director, based on its "reluctance to interfere inordinately with executive control of immigration policies." [4]

### B.

The main thrust of Ghalamsiah's argument is the initially appealing contention that because a district court in habeas corpus proceedings may release a petitioner unconditionally, *a fortiori* it can set bail as a condition of release. His reliance upon *Principe v. Ault,* 62 F.Supp. 279 (N.D.Ohio 1945) for the proposition that the power to set bail is inherently vested in the district court is misplaced, however, because that

construction of which is the sole issue in this case, they are inapposite.

Moreover, Ghalamsiah does not show that his detention was illegal to begin with, a prerequisite for habeas corpus relief. *See infra.*

opinion itself notes that the exercise of this inherent power may be forbidden by statute. *Id.* at 284.

Ghalamsiah seems to be confusing the different circumstances under which the district courts are empowered to grant relief in habeas corpus. It is true that in habeas corpus proceedings *generally* the district courts may release a petitioner without bail. But the petitioner must first show that the detention is *illegal.*[5] For aliens taken into custody pending determination of deportability or under order of deportation, § 242 provides for habeas corpus relief even without any showing of illegality of detention; instead, the petitioner must make a conclusive showing that the Attorney General has not proceeded with reasonable dispatch under the circumstances. Ghalamsiah has met the requirements of neither route: he complains neither of illegality of detention nor of unreasonable delay by the Attorney General or the district director.

Inasmuch as Ghalamsiah's argument that the district court was empowered to release him on bail rests upon the premise that the court could have released him without bail, a premise which we reject in view of his failure to show either illegal detention or unreasonable delay, we must also reject his conclusions. We hold that under the Immigration and Nationality Act, 8 U.S.C. § 1252(c), the Attorney General of the United States has the exclusive discretionary authority to release on bail an alien, not illegally detained, pending a motion to reopen the deportation proceedings, subject to review by a district court.

### III.

Accordingly, the order of the district court with respect to Ghalamsiah's release on bail will be vacated and the case remanded to the district court with directions to remand the proceedings to the district director for disposition of Ghalamsiah's application for release on bail.

---

5. *See McNally v. Hill, Warden,* 293 U.S. 131, 139, 55 S.Ct. 24, 27, 79 L.Ed. 238 (1934) ("Wherever the issue has been presented, this Court has consistently refused to review, upon *habeas corpus,* questions which do not concern the lawfulness of the detention.").