**Vu Tam THANH, Plaintiff,**

v.

**Edward McELROY, District Director, U.S. Immigration & Naturalization Service, Respondent.**

No. 96–CV–5586.

United States District Court, E.D. Pennsylvania.

May 6, 1997.

Vu Tam Thanh, pro se.

James G. Sheehan, Asst. U.S. Atty., Chief, Civ. Div., Marilyn S. Mays, Asst. U.S. Atty., Philadelphia, PA, for Respondent.

### OPINION AND ORDER

VAN ANTWERPEN, District Judge.

## I. BACKGROUND

On August 12, 1996, proceeding *pro se,* Vu Tam Thanh ("Thanh") petitioned this court for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2241 and the matter was referred to a magistrate judge. Thanh is presently incarcerated and awaiting deportation at the Berks County Prison in Leesport, Pennsylvania. On March 26, 1996 pursuant to Immigration and Naturalization Act ("INA") § 242(c), 8 U.S.C. § 1252(c), United States Magistrate Judge James R. Melinson recommended that Thanh's petition be granted and that this matter be remanded to the District Director of the United States Immigration and Naturalization Services ("INS") to set conditions of supervision as required by INA § 242(d), 8 U.S.C. § 1252(d). Magistrate Judge Melinson's recommendations were based on 8 U.S.C. § 1252(c) prior to its recent amendment by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104–132, 110 Stat. 1214 (Apr. 24, 1996) ("AEDPA") and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. 104–208, 110 Stat. 3009 (Sept. 30, 1996) ("IIRIRA") "because to do otherwise would give these amendments retroactive effect absent the clear intent of Congress to do so." Report of March 26, 1997 at 5 n. 4 (citing *United States v. Igbonwa,* Crim. A. No. 90–375–1, 1996 WL 694178 (E.D.Pa. Nov.29, 1996) and *Landgraf v. USI Film Prod.,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)).

The government has filed objections opposing Magistrate Judge Melinson's recommendation, claiming the current Transition Period Custody Rules, IIRIRA § 303(b)(2)-(3), rather than former INA § 242(c), 8 U.S.C. § 1252(c), govern this case and apply

retroactively to Petitioner.[1] Because timing is essential to questions of retroactivity, we begin with a chronology of events that includes the relevant dates of the recent statutory amendments.

## II. CHRONOLOGY

On February 26, 1985 Thanh entered the United States as a conditional refugee. He later became a legal permanent resident. Slightly more than five years after his entry, on March 29, 1990, Thanh pled guilty in a New York state court to two counts of first degree and one count of second degree robbery. On July 16, 1991 Thanh was served with an order to show cause for deportation proceedings. Thanh was notified by the INS that he was subject to deportation as an alien convicted of two or more crimes involving moral turpitude. *See* INA § 241(a)(2)(A)(ii), 8 U.S.C.A. § 1251(a)(2)(A)(ii) (1995).[2] Thanh was released on state parole on December 24, 1992, and was personally served with an order to show cause. On April 17, 1993, Thanh violated his state parole and was incarcerated. Thanh was turned over to INS custody in March 1997. Deportation proceedings were held from August through October 1995. On November 8, 1995, Thanh was ordered deported from the United States. While Thanh did file an appeal, he withdrew that appeal and the November 8, 1995 order became his final order of deportation. 8 C.F.R. § 3.4 (1996).

At the time Thanh's deportation order became final, almost any alien under a final administrative order of deportation had the right to petition a district court for *habeas corpus* relief under INA § 242(c), 8 U.S.C. § 1252(c). To obtain relief with such a petition, an alien did not have to show that his present detention was illegal.[3] *Matter of Ghalamsiah*, 806 F.2d 68, 73 (3d Cir.1986). The alien petitioner did have to make a conclusive showing that the Attorney General had not acted with reasonable dispatch under the circumstances. *Id.* This required proof of no action within the six months provided by statute where no explanation for the delay was provided. *Dalis v. Brady*, 766 F.Supp. 901 (D.Colo.1991) (citing 8 U.S.C. § 1252(d)).[4] The only aliens subject to a final order of deportation whose *habeas corpus* relief under

---

1. The government also objected to the recommendation on the ground that petitioner failed to exhaust his administrative remedies under the Transition Period Custody Rules. Because the District Director of the INS for Philadelphia denied the petitioner's release on April 28, 1997 pursuant to the Transition Period Custody Rules, we will not address this issue.

2. 8 U.S.C. § 1251(a)(2)(A)(ii) provided:

   Any alien who at any time after entry is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal conduct, regardless of whether confined therefore and regardless of whether the convictions were in a single trial, is deportable.
   The current provision is contained in 8 U.S.C. § 1227(a)(2)(A)(ii).

3. 8 U.S.C. § 1252(c) provided:

   (c) Final order of deportation; place of detention
   (1) When a final order of deportation under administrative processes is made against any alien, the Attorney General shall have a period of six months from the date of such order, or, if judicial review is had, then from the date of the final order of the court, within which to effect the alien's departure from the United States, during which period, at the Attorney General's discretion, the alien may be detained, released on bond in an amount and containing such conditions as the Attorney General may prescribe. Any court of competent jurisdiction shall have authority to review or revise any determination of the Attorney General concerning detention, release on bond, or other release during such six-month period upon a conclusive showing in habeas corpus proceedings that the Attorney General is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances in the case of any alien to effect such alien's departure from the United States within such six-month period. If deportation has not been practicable, advisable, or possible, or departure of the alien from the United States under the order of deportation has not been effected, within such six-month period, the alien shall become subject to such further supervision and detention pending eventual deportation as is authorized in this section....
   8 U.S.C.A. § 1252(c) (1995).

4. 8 U.S.C. § 1252(d) provided:

   Any alien against whom a final order of deportation as defined in subsection (c) of this section heretofore or hereafter issued has been outstanding for more than six months, shall, pending eventual deportation, be subject to supervision under regulations prescribed by the Attorney General.
   8 U.S.C.A. § 1252(d) (1995).

this provision was constrained were aliens convicted of an aggravated felony. *See* 8 U.S.C.A. § 1252(a)(2) (1995).[5] Thanh's offenses did not constitute aggravated felonies. Thanh did not request *habeas corpus* relief during the time between the entry of his final order of deportation and the amendment of 8 U.S.C. § 1252 by AEDPA §§ 440(c), (h).

On April 24, 1996, less than six months after Thanh's final order of deportation was entered, AEDPA §§ 440(c), (h) amended 8 U.S.C. §§ 1252(a)(2), (c) to eliminate for a broad group of criminal aliens both the Attorney General's discretion to release them and the district court's authority to grant them *habeas corpus* relief without a showing that their detention was illegal:.

(a)(2) The Attorney General shall take into custody any alien convicted of any criminal offense covered by section 241(a)(2)(A)(iii), (B), (C), or (D) or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(i). Notwithstanding paragraph (1) or subsections (c) and (d) of this section, the Attorney General shall not release such felon from custody. . . .

(c)(1) Subject to paragraph (2), when a final order of deportation under administrative processes is made against any alien . . . [a]ny court of competent jurisdiction shall have authority to review or revise. . . .

(2) When a final order of deportation under administrative process is made against any alien who is deportable by reason of having committed a criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D) or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(i), the Attorney General shall

have 30 days from the date of the order within which to effect the alien's departure from the United States. The Attorney General shall have sole and unreviewable discretion to waive the foregoing provision for aliens who are cooperating with law enforcement authorities for the purpose of national security. [emphasis added].

AEDPA § 440 had only one express provision dealing with the section's effective date. While that provision provided that certain amendments would apply only to convictions entered on or after the date of the enactment of the AEDPA, this limitation on the effective date did not apply to the amendments made to 8 U.S.C. § 1252 by AEDPA §§ 440(c), (h). *See* AEDPA § 440(f). The Third Circuit has held that another subsection of 440 dealing with appellate jurisdiction of final orders of deportation (as opposed to bond and custody redeterminations) was effective upon it's enactment on April 24, 1996 and had the effect of withdrawing jurisdiction over appeals filed before that date. *Salazar-Haro v. Immigration and Naturalization Service,* 95 F.3d 309 (3d Cir.1996).

Whatever the retroactive effect of these April 24, 1996 amendments, it was not entirely clear at that time whether or not the amendments prohibited Thanh from seeking *habeas corpus* relief under 8 U.S.C. § 1252(c). The amendment language "section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(i)" left an ambiguity with respect to aliens like Thanh. As stated above, Thanh had been found deportable because he had been convicted of committing two acts of moral turpitude under INA § 241(a)(2)(A)(ii), 8 U.S.C. § 1251(a)(2)(A)(ii). It could be argued under a broad reading of this amendment language that Thanh's pred-

---

**5.** 8 U.S.C. § 1252(a)(2) provided:

(A) The Attorney General shall take into custody any alien convicted of an aggravated felony upon release of the alien (regardless of whether or not such release is on parole, supervised release, or probation, and regardless of the possibility of rearrest or further confinement in respect of the same offense). Notwithstanding paragraph (1) or subsection (c) and (d) of this section, but subject to subparagraph (B) of this section, the Attorney General shall not release such felon from custody.

(B) The Attorney General may not release from custody any lawfully admitted alien who has been convicted of an aggravated felony, **either before or after a determination of deportability,** unless the alien demonstrates to the satisfaction of the Attorney General that such alien is not a threat to the community and that the alien is likely to appear before any scheduled hearings. [emphasis added].

icate offenses would not have been covered by section 241(a)(2)(A)(i) because he had been convicted of those acts more than five years after his date of entry into this country.[6] Under this reading of AEDPA §§ 440(c), (h) the Attorney General would have had the discretion to release Thanh and Thanh would have had the right to bring a *habeas corpus* petition under 8 U.S.C. § 1252(c).

Thanh did file a *habeas corpus* petition on August 12, 1996 with this court. Less than two months later, on September 30, 1996, IIRIRA was enacted. IIRIRA § 306(d) consists of a technical amendment, "[e]ffective as if included in the enactment of [AEDPA §§ 440(a), (c), (d), (g), and (h) ]" by which Congress clarified that the elimination of both the Attorney General's discretion to release certain criminal aliens and such aliens' rights to bring *habeas corpus* petitions under 8 U.S.C. § 1252(c) applied to aliens who committed two acts of moral turpitude without regard to the date of the commission of those acts.[7]

In addition, IIRIRA § 303(a) amended 8 U.S.C. § 1226(e) dealing with the "Apprehen-sion and detention of aliens" to eliminate judicial review of the Attorney General's decisions "regarding the detention or release of any alien or the grant, revocation or denial of bond or parole." IIRIRA § 303(c); 8 U.S.C.A. § 1226(e) (1997).[8] Similarly, IIRIRA § 305 amended 8 U.S.C. § 1231 dealing with "Detention and removal of aliens ordered removed" to eliminate private rights of action "to compel the release, removal, or consideration for release or removal of any alien." IIRIRA § 305(a). While under IIRIRA § 309(c) provisions regarding judicial review such as those contained in IIRIRA §§ 303(a) and 305 might not apply to aliens who were placed in deportation proceedings before April 1, 1997, those provisions certainly do not give such aliens any greater rights to petition for *habeas corpus* relief than existed under AEDPA prior to IIRIRA's enactment.[9]

Finally, as provided for in IIRIRA, on October 9, 1996 the Transition Period Custody Rules went into effect, the date when the Attorney General notified Congress that the conditions in IIRIRA § 303(b)(2) existed. *See Matter of Noble,* Interim Decision 3301,

---

6. INA § 241(a)(2)(A)(i) provided:
   Crimes of moral turpitude
   Any alien who—
   (I) is convicted of a crime involving moral turpitude committed within five years (or ten years in the case of an alien provided lawful permanent resident status under section 1255(i) of this title) after the date of entry, and
   (II) either is sentenced to confinement or is confined therefore in a prison or correctional institution for one year or longer,
   is deportable.
   8 U.S.C.A. § 1251(a)(2)(A)(i) (1996); *See* INA § 237(a)(2)(A)(i), 8 U.S.C.A. § 1227(a)(2)(A)(i) (1997) for the current provision.

7. IIRIRA § 306(d) provides:
   TECHNICAL AMENDMENT.—Effective as if included in the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Public Law 104–132), subsections (a), (c), (d), (g), and (h) of section 440 of such Act are amended by striking "any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(i)" and inserting "any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are, without regard to the date of their commission, otherwise covered by section 241(a)(2)(A)(i)."

8. 8 U.S.C. § 1226(e) as amended reads:

Judicial Review.—The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation or denial of bond or parole.

9. IIRIRA § 309(c) provides:

Transition for Aliens in Proceedings—
(1) General Rule that New Rules Do Not Apply—Subject to the succeeding provisions of this subsection, in the case of an alien who is in exclusion or deportation proceedings as of the title III–A effective date—
(A) the amendments made by this subtitle shall not apply, and
(B) the proceedings (including judicial review thereof) shall continue to be conducted without regard to such amendments.
IIRIRA § 309(a) provides:
In General.—Except as provided in this section and sections 303(b)(2), 306(c), 308(d)(2)(D), or 308(d)(5) of this division, this subtitle and the amendments made by this subtitle shall take effect on the first day of the first month beginning more than 180 days after the date of the enactment of this Act (in this title referred to as the "title III–A effective date").

1997 WL 61453 (B.I.A. Jan. 16, 1997). Although the transition rules themselves contain no express provision regarding district court review, we can find no reason to believe that a criminal alien's right to petition this court for *habeas corpus* relief became any broader under these rules on October 9, 1996 than it had been prior to this time under AEDPA. *See* 8 U.S.C.A. § 1226 note "Effective Date of 1996 Amendments" (1997).

## III. DISCUSSION

We find that Thanh does not have a right to petition this court for *habeas corpus* relief under 8 U.S.C. § 1252(c) prior to its recent amendments by AEDPA and IIRIRA. As we have explained, the amendments and transition rules under IIRIRA §§ 303 and 305 provide Thanh with no greater right to petition this court than existed upon AEDPA's enactment. Thus, we will confine our discussion of retroactivity to AEDPA and its technical amendments under IIRIRA. In *Matter of Valdez*, Interim Decision 3302, 1997 WL 80989 (B.I.A. Jan. 30, 1997), the Board of Immigration Appeals ("BIA") adopted a framework for determining retroactivity used by the Supreme Court in *Landsgraf*:[10]

> Pursuant to the teachings of *Landsgraf* [Landgraf], when Congress does not prescribe the temporal reach of a newly enacted statute, it is presumed that the statute does not apply to events antedating its enactment if doing so would impair substantive rights in place before that date. The *Landsgraf* [Landgraf] Court noted that deciding retroactivity is not a simple or mechanical task, but one that should be guided by considerations of fair notice, reasonable reliance, and settled expectations. *Landsgraf* [Landgraf] [511 U.S. at 266–70], 114 S.Ct. at 1498–99. A statute, however, is not impermissibly retroactive simply because it applies to conduct predating its enactment. *Id.* at [268–70, 114 S.Ct. at] 1499. Rather, retroactivity arises only if its application "would impair rights a party possessed when he acted, increase a par-

ty's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at [280, 114 S.Ct. at] 1505.

*Matter of Valdez* at 10. In *Matter of Valdez*, the BIA held that the Transition Period Custody Rules applied retroactively because the release of an alien not under a final administrative order of deportation constituted prospective relief. *Matter of Valdez* at 8–10. However, we need not reach the issue of whether the release of an alien under a final order of deportation would be prospective relief because Thanh did not file his petition until after the enactment of AEDPA §§ 440(c), (h) on April 24, 1996 and therefore he did not vest any right to relief under the former 8 U.S.C. § 1252(c). *Cf. Igbonwa* (AEDPA § 440(c) should not be applied retroactively where petitioner requested relief prior to April 24, 1996). Thus, we believe that 8 U.S.C. § 1252(c) as it existed prior to its amendment by AEDPA does not apply to the petitioner.

Because the inquiry under *Landgraf* and *Matter of Valdez* regarding substantive rights is only made when the intent of Congress is not clear, we believe that AEDPA § 440(c) and its technical amendments under IIRIRA eliminated petitioner Thanh's right to seek *habeas corpus* relief without a showing of illegal detention. As noted above, Congress expressly made the technical amendments to AEDPA §§ 440(c), (h)—clarifying that convictions for acts of moral turpitude did not need to have been committed within five years of an alien's entry—retroactive so as to be effective as if they were enacted with AEDPA §§ 440(c), (h) on April 24, 1996. Since we hold that those provisions in AEDPA §§ 440(c), (h) applied to Thanh on the date of their enactment, Thanh cannot petition this court for *habeas corpus* relief without a showing that he is being held illegally. Accordingly, we will sustain the government's objections and decline to adopt Magistrate Melinson's recommendations.

We are not aware of any evidence that Thanh's detention is illegal, nevertheless in

---

**10.** This decision is entitled to deference by the courts. *Reno v. Flores*, 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993); *Chevron U.S.A. v.* *Natural Res. Def. Council*, 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984).

Petitioner's Opposition to Respondent's Objections filed on April 17, 1997 Petitioner claims that he is being subjected to intense overcrowding. In an abundance of caution we will remand this matter to the magistrate for a determination as to whether or not Thanh's detention is illegal.

### *ORDER*

AND NOW, this 6th day of May, 1997, upon careful and independent consideration of the petition for writ of *habeas corpus,* and after review of the Report and Recommendation of United States Magistrate Judge James R. Melinson filed March 26, 1997, the Respondent's Objections thereto filed April 7, 1997, Petitioner's Opposition to Respondent's Objections filed April 17, 1997, the Respondent's Reply filed April 25, 1997, and Respondent's Supplemental Exhibits filed April 29, 1997, **IT IS ORDERED** that:

1. The Respondent's Objections are **SUSTAINED.**

2. The Report's recommendation that *habeas corpus* relief be granted pursuant to 8 U.S.C. § 1252(c) and that the case be remanded to the District Director of the U.S. Immigration and Naturalization Services to set conditions as required in 8 U.S.C. § 1252(d) is **REJECTED.**

3. The facts found in the Report are **APPROVED** and **ADOPTED.**

4. This matter is **REMANDED** for further determinations, findings, and recommendations consistent with the foregoing opinion.